IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ERIK SALAIZ**, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § § | |
| **PARAGON FINANCIAL CORP** d/b/a **NATIONAL RELIEF CENTER** d/b/a **CONSUMER CREDIT CARD RELIEF** a Florida Corporation | § § § § § § | |
| Defendant, | § § | |
| **DMB FINANCIAL, LLC**, a Massachusetts Limited Liability Company | § § § § | Civil Action No. 24-CV-438 |
| Defendant, | § § | **DEMAND FOR CLASS ACTION** |
| **COMPLETE LEGAL PLAN, LLC**, a Florida Limited Liability Company | § § § | |
| Defendant, | § § | |
| And | § § | |
| **JOHN DOE,** | § § § | |
| Defendant | § § § § | |

CLASS ACTION COMPLAINT

## INTRODUCTION

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants PARAGON FINANCIAL CORP d/b/a NATIONAL RELIEF CENTER d/b/a CONSUMER CREDIT CARD RELIEF (hereinafter "Paragon"), DMB FINANCIAL, LLC (hereinafter "DMB") and COMPLETE LEGAL PLAN, LLC (hereinafter "CLP") to stop their illegal practice of placing, unsolicited telephone calls through its agents and/or telemarketer JOHN DOE in violation of the Telephone Consumer Protection Act (hereinafter "TCPA") and Texas Business and Commerce Code 302.101 (hereinafter "TBCC"). Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants Paragon, DMB, or CLP. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorney.

## PARTIES

1. Plaintiff Erik Salaiz (hereinafter "Plaintiff") is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Plaintiff may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

3. Defendant Paragon is a corporation existing under the laws of Florida and can be served via its registered agent Varela Jenssen at 6300 NW 5th Way, Suite 100, Fort Lauderdale, Florida 33309.

4. Defendant DMB is a limited liability company existing under the laws of Massachusetts and can be served via its registered agent Corporation Service Company at 84 State Street, Suite 660, Boston, Massachusetts 02109.

5. Defendant CLP is a limited liability company existing under the laws of Florida and can be served via its registered agent Tony Pardo at 1451 W. Cypress Creek Road, Suite 300, Fort Lauderdale, Florida 33309.

6. Upon information and belief, unnamed party John Doe is an unidentified telemarketing company making unsolicited phone calls to consumers residential phone numbers nationwide at the instruction, direction, and oversight of Defendants Paragon, DMB, and CLP.

7. Defendants Paragon, DMB, and CLP are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

8. This action is brought by Plaintiff pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

9. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiffs TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the Texas Business and Commerce Code form part of the same case or controversy as Plaintiff's claims under the TCPA.

10. <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over Defendants. Defendants sent its illegal telemarketing calls through their agents and/or telemarketer John Doe to a telephone number in this District. Furthermore, Defendants do continuous and systematic business in this District by selling leads into this District.

11. This Court has general personal jurisdiction over the Defendants as they, upon information and belief, authorized unsolicited calls to be placed on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

12. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claims alleged herein occurred within the Western District of Texas,

## FACTUAL ALLEGATIONS

13. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. Plaintiff's personal cell phone (XXX) XXX-6688 has been registered on the National Do-Not-Call Registry since March 7, 2024.

15. Plaintiff has never instructed the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry. Plaintiff has been on the National Do-Not-Call Registry at all times relevant to this Complaint.

16. Plaintiff's telephone number -6688 is a residential number.

17. Plaintiff's telephone number -6688 is used for personal purposes and is not associated with business.

18. Upon information and belief, Defendant Paragon offers a variety of marketing services including lead generation to law firms nationwide according to its website https://paragonfinancialcorp.com.

19. Upon information and belief, Defendant CLP provides its members with access to a nationwide network of plan attorneys and charges its members a monthly service fee according to its website https://completelegalplan.com.

20. Upon information and belief, Defendant DMB offers debt relief services to consumers nationwide according to its website https://www.dmbfinancial.com.

21. Defendants Paragon, DMB, and CLP operate as a common enterprise.

22. As part of their marketing campaign, and to generate new business for this common enterprise, Defendants Paragon, DMB, and CLP engage in illegal telemarketing and place unsolicited calls through their telemarketer John Doe to thousands of consumers' residential telephone numbers nationwide.

23. John Doe an unknown entity is believed to be located offshore and out of the jurisdiction of the United States and the State of Texas.

24. Upon information and belief, Defendants Paragon, DMB, and CLP instruct and give interim instructions to John Doe by providing lead-qualifying instructions and lead volume limits.

25. Upon information and belief, Defendants Paragon, DMB, and CLP determine the times in which the phone calls would be placed by John Doe to perspective consumers and which states to target as part of the campaign.

26.    Upon information and belief, Defendants Paragon, DMB, and CLP pay John Doe a
commission fee for providing the telemarketing campaign.

27.    Defendants Paragon, DMB, and CLP have each been a party to at least one lawsuit for
violating the TCPA, *Cunningham v. The Oliver Law Group, PA et al*, No. 4:18-cv-00680-
ALM-CAN (E.D.TX., Sept. 25, 2018), *Garner v. Paragon Financial Corp*., No. 4:23-cv-
04367 (S.D.TX., Nov. 17, 2023) and *Cacho v. DMB Financial, LLC et al*, No. 3:23-cv-
00455-FM (W.D.TX., Dec. 18, 2023).

28.    Defendants Paragon, DMB, and CLP continue to engage in violating the TCPA because
it benefits each Defendant financially.

29.    Upon information and belief, Defendants Paragon, DMB, and CLP have made substantial
profit gains through illegal telemarketing.

30.    Through the month of August 2024, Plaintiff received at least five (5) unsolicited calls to
his telephone number -6688 from John Doe from a variety of spoofed caller IDs on the
following dates and times,

1)   August 6, 2024, at 12:51 PM, from caller ID (480) 480-1587
2)   August 12, 2024, at 1:42 PM, from caller ID (860) 483-5926
3)   August 13, 2024, at 1:48 PM, from caller ID (432) 422-6635
4)   August 21, 2024, at 1:58 PM, from caller ID (470) 809-8683
5)   August 23, 2024, at 1:43 PM, from caller ID (505) 587-6924

31.    Plaintiff answered each call and was connected to telemarketers with John Doe who had
the same scripted telemarketing pitch,

"This short call is to let you know that we are **running a nationwide campaign** to help
people who are buried with more than ten thousand dollars in unsecured debt do you have
any credit card debt?" (emphasis added).

32. Plaintiff did not request information regarding debt relief services and did not know who was making these unsolicited calls to him as John Doe failed to identify who they were and who they were calling on behalf of.

33. Plaintiff advised the telemarketers from John Doe on the first four calls that he was not interested and to remove his phone number -6688 from their calling list.

34. Plaintiff became extremely aggravated and annoyed by calls from John Doe and engaged in the fifth call as it was the only way to identify who was behind the calls.

35. The John Doe telemarketer asked Plaintiff for his name and began to ask Plaintiff qualifying questions regarding a debt settlement program.

36. John Doe telemarketer then stated to Plaintiff,

    "Okay I don't want to waste your time sir it seems like you're perfectly qualified and we can help you to get out of this debt I do have my debt specialist on the line with me he is the best person who will guide you how you can get out if this debt okay?"

37. With no disconnection or interruption of the call, Plaintiff was then live transferred to an agent with Defendant Paragon name Riffie Feldman (hereinafter "Feldman").

38. Feldman advised Plaintiff that she was with the "National Relief Center."

39. Upon information and belief, National Relief Center" is a fictious business name used by Defendant Paragon.

40. Feldman asked Plaintiff qualifying questions regarding Plaintiff's debt and asked what state Plaintiff resided in.

41. Plaintiff advised Feldman he resided in Texas.

42. Feldman was well aware Plaintiff resided in Texas and continued the call.

43. Feldman advised Plaintiff that she was required to run a soft credit check in order to validate Plaintiff's debt.

44. Feldman confirmed Plaintiff's debt and the asked for Plaintiff's email and mailing address and placed Plaintiff on hold.

45. While on hold, the call dropped.

46. Plaintiff immediately, after the disconnection, received a missed call from (561) 486-2086.

47. Plaintiff called back (561) 486-2086 to identify who called him and was then connected to Feldman.

48. Feldman apologized to Plaintiff and said the call was disconnected.

49. Feldman asked Plaintiff a series of more qualifying questions and solicited Plaintiff for a debt relief program with Defendant DMB on behalf of Defendants Paragon, DMB, and CLP.

50. Feldman advised Plaintiff that the terms of the debt relief program were for Plaintiff to make 48 monthly payments in the amount of $1758.35.

51. Plaintiff received an email from Feldman from "DMBFinancial via Docusign." *See Exhibit A.*

52. The email Plaintiff received from Feldman contained a combined client enrollment agreement that included Defendants Paragon, DMB, and CLP. *See Exhibit B.*

53. Plaintiff did not at any point sign or execute the client enrollment agreement.

54. On September 19, 2024, Plaintiff received a text message from Feldman regarding more debt relief options. The text message identified Feldman with Defendant Paragon rfeldman@consumercreditcardrelief.com.

Thursday, Sep 19 • 8:11 AM

Good afternoon Erik, This is Riffie Feldman with National Relief Center I enjoyed speaking with you and please feel free to contact me at anytime. I have some debt relief options that will definitely help you in the short and long run Give me a call (561 486-2086) I can definitely help you. Thanks again, Riffie Feldman Debt Relief Specialist rfeldman@consumercreditcardrelief.com

8:11 AM

55. According to Florida's Secretary of State website https://dos.sunbiz.org/ficinam.html "Consumer Credit Card Relief" was a fictitious name used by Defendant Paragon from June 12, 2014, to December 31, 2019. Registration Number G14000058780.

56. Defendant Paragon continues to operate under Consumer Credit Card Relief to obtain business.

57. Plaintiff continued to be bombarded with calls from Feldman and other agents with Defendant Paragon through the month of September 2024.

58. On September 5, 2024, at 2:15 PM, Plaintiff received a call to his phone -6688 from caller ID (786) 869-5292.

59. Plaintiff was connected to an agent with Defendant Paragon named William was calling Plaintiff regarding the client enrollment agreement that was sent to Plaintiff.

60. Plaintiff advised William that Plaintiff was going to have someone help him with his debt and disconnected the call.

61. On September 27, 2024, at 1:16 PM, Plaintiff received a call to his phone -6688 from caller ID (561) 726-1653.

62. **DNC# 1** - Plaintiff was connected to the same agent William with Defendant Paragon who was again calling about the client enrollment agreement that was sent to Plaintiff.

63. Plaintiff stated to William, "I had already told you guys I was good umm if you guys can just remove my number I'm good thank you."

64. Despite Plaintiff's do-not-call request, Plaintiff continued to be bombarded and harassed by knowing and willful unsolicited calls to his phone -6688 from agents with Defendant Paragon on the following dates and times.

   1) September 30, 2024 @ 11:58AM from caller ID (786) 869-5299
   2) October 1, 2024, at 11:21 AM from caller ID (786) 869-5292
   3) October 2, 2024, at 11:14 AM from caller ID (786) 869-5292
   4) October 16, 2024, at 9:21 AM from caller ID (786) 869-5299
   5) October 21, 2024, at 2:15 PM from caller ID (561) 468-7279
   6) October 30, 2024, at 1:34 PM from caller ID (561) 726-1653
   7) November 4, 2024, at 9:19 AM from caller ID (561) 726-1653
   8) November 5, 2024, at 12:17 PM from caller ID (786) 891-2819
   9) November 12, 2024, at 3:14 PM from caller ID (786) 869-5299
   10) November 22, 2024, at 10:44 AM from caller ID (786) 891-2819
   11) December 2, 2024, at 3:22 PM from caller ID (561) 473-0414

65. Plaintiff on multiple occasions advised Defendant Paragon's agents that he was not interested and to remove his telephone number.

66. The unsolicited calls Plaintiff is seeking relief for are stated in paragraphs 30 and 64 of this complaint.

67. Upon information and belief, Defendants Paragon, DMB, and CLP employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

68. Upon information and belief, neither Defendants Paragon, DMB, or CLP have a solicitation registration certificate and bond on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through its agents and/or telemarketers.

69. Plaintiff is a Texas resident.

70. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain neither Defendants Paragon, DMB, or CLP registration.

71. Neither Defendants Paragon, DMB, or CLP qualify for an exemption under § 302.053.

72. Plaintiff never provided his prior express written consent to receive any of the calls.

73. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

74. Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

75. Upon information and belief the alleged calls were placed without Defendants Paragon, DMB, or CLP training their agents and/or telemarketers on the use of an internal do-not-call policy.

**BASIS FOR LIABILITY**

76. Plaintiff realleges paragraphs one through seventy-six and incorporates them herein as if set forth here in full.

77. Even if Defendants Paragon, DMB, or CLP did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

**ACTUAL AUTHORITY**

78. Plaintiff realleges paragraphs one through seventy-seven and incorporates them herein as if set forth here in full.

79. Defendants Paragon, DMB, and CLP authorized and hired John Doe to generate prospective customers through illegal telemarketing calls.

80. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

81. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

82. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

83. John Doe solicited Plaintiff on behalf of the Defendants Paragon, CLP, and DMB. Accordingly, John Doe had Defendants Paragon, CLP, and DMB's actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPARENT AUTHORITY

84. Plaintiff realleges paragraphs one through eighty-three and incorporates them herein as if set forth here in full.

85. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The

ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

86. Defendants Paragon, DMB, and CLP authorized John Doe to generate prospective business for them through illegal telemarketing.

87.  John Doe called and transferred calls to Defendant Paragon who solicited Plaintiff for a debt relief program with Defendant DMB on behalf of Paragon, DMB, and CLP. The integration of their sales efforts was so seamless that it appeared to Plaintiff that John Doe and Defendants Paragon, DMB, and CLP all appeared to be acting together as the same company.

88. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that John Doe had received permission to sell, market, and solicit the products of Defendants Paragon, DMB, and CLP.

89. As a direct and proximate result of John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants Paragon, CLP, and DMB, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

90. Plaintiff realleges paragraphs one through eighty-nine and incorporates them herein as if set forth here in full.

91. Defendants Paragon, DMB, and CLP knowingly and actively accepted business that originated through the illegal calls placed by John Doe.

92. By accepting these contacts and executing contracts with the robocall victims, John Doe "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendants Paragon, DMB, and CLP, as described in the Restatement (Third) of Agency.

93. John Doe called Plaintiff and the class and solicited customers to transfer to Defendant Paragon.

94. Defendants Paragon, DMB, and CLP received new customers and the possibility of new business.

95. Defendants Paragon, DMB, and CLP ratified John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

96. Defendants further ratified John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

97. As a direct and proximate result of John Doe's illegal phone calls, Plaintiff and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.


CLASS ALLEGATIONS


98. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) who Defendants called and every entity calling on behalf of Defendants (3) whose telephone numbers were

registered on the Federal Do Not Call registry for more than 30 days at the time.

**Texas Subclass**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called and every entity calling on behalf of Defendants (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

99. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants' or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

100. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants' have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

101. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

102. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously

prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

103. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

104. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

105. Whether the unsolicited calls were caused by the Defendants;

106. Whether the unsolicited calls promoted the Defendants' products or services;

107. Whether the Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

108. Whether the Defendants obtained written express consent prior to sending the calls;

109. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

110. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden

and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## LOCAL RULES

111. Plaintiff, pursuant to local rules, shall move to certify this complaint as a Class Action.

112. Plaintiff will reidentify the classes, exclusions of the classes, numerosity, typicality, adequacy of representation, generality, commonality, predominance, and superiority in Plaintiffs 'Motion to Certify.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

113. Plaintiff realleges paragraphs one through one hundred and twelve and incorporates them herein as if set forth here in full.

114. The alleged calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

115. The alleged calls harmed Plaintiff by trespassing upon and interfering with his rights and interests in his cellular telephone.

116. The alleged calls harmed Plaintiff by intruding upon his seclusion.

117. Plaintiff has been harmed, injured, and damaged by the alleged calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of All Class – Against All Defendants)**

118. Plaintiff realleges paragraphs one through one hundred and seventeen and incorporates them herein as if set forth here in full.

119. The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

120. Defendants and/or their agents or telemarketers placed unsolicited phone calls to Plaintiff's and the Class members' DNC registered telephones without having their prior written consent to do so.

121. Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

122. Defendants solicitating phone calls were made for the commercial purpose of selling debt relief services.

123. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

124. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

125. Plaintiff also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**<u>Second Cause of Action</u>:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On Behalf of Plaintiff and the Texas Subclass – Against All Defendants)**

126. Plaintiff realleges paragraphs one through one hundred and twenty-five and incorporates them herein as if set forth here in full.

127. Defendants' placed illegal solicitation sales calls to Plaintiff and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

128. Upon information and belief the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

129. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

130. Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

131. As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Plaintiff may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

132. As a result of the Defendants' violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz, individually and on behalf of the Class prays for the following relief:

A. An order certifying the class (pursuant to this Court's local rules);

B. An order declaring that the Defendants' actions, as set out above, violate 227(c) of the TCPA;

C. An order declaring that the Defendants' actions, as set out above, violate 227(c) willfully and knowingly;

D. An award of $500.00 per call in statutory damages arising from the TCPA §227(c) for each violation;

E. An award of $1,500.00 per call in statutory damages arising from the TCPA §227(c) for each intentional violation;

F. An order declaring that the Defendants' actions, as set out above, violate Texas Business and Commerce Code 302.101;

G. An award of $5,000.00 per call in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

H. An injunction requiring Defendants to cease sending all unlawful calls;

I. An award of reasonable attorneys' fees and costs; and

J. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 9th day of December 2024.

Respectfully Submitted,

The Darwich Law Firm, LLC
  /Omar F. Darwich/ _____
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**

**VERIFICATION STATEMENT**

I, Erik Salaiz, hereby state under oath that I am the Plaintiff in this dispute, that I have read the foregoing complaint, and that it is are true and accurate to the best of my knowledge and belief, except as to matters stated on information and belief, and that as to those matters I believe to be true.

I declare under penalty of perjury that the foregoing verification is true and correct to the best of my knowledge and belief, and as to any matter stated on belief, I believe such to be true.

Dated this 9th day of December 2024.

/_____Erik Salaiz_____/
Plaintiff